NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0437n.06
Nos. 16-5569 / 16-5644

**FILED**

AUG 24 2018

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DEBORAH S. HUNT, Clerk

KENTUCKY EMPLOYEES RETIREMENT )
SYSTEM; BOARD OF TRUSTEES OF )
KENTUCKY RETIREMENT SYSTEMS, )
)
    Appellants/Cross-Appellees, )
)
v. )
)
SEVEN COUNTIES SERVICES, INC., )
)
    Appellee/Cross-Appellant. )

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF KENTUCKY

OPINION

---

**BEFORE: COLE, Chief Judge; McKEAGUE and STRANCH, Circuit Judges.**

**ORDER OF CERTIFICATION TO THE SUPREME COURT OF KENTUCKY**

**PER CURIAM.** This Court, invoking Kentucky Rule of Civil Procedure 76.37 (entitled

"Certification of question of law"), hereby requests the Supreme Court of Kentucky to exercise its

discretion to answer a certified question of law in this cause. The answer to this certified question

may be determinative of the cause now pending before this court; Kentucky law is applicable

thereto; and there is no controlling precedent in the decisions of the Supreme Court of Kentucky

or the Court of Appeals of Kentucky.[1] Pursuant to Rule 76.37(3), this Order of Certification sets

forth the following:

---

[1] Rule 76.37 is invoked upon the motion of Appellants/Cross-Appellees Kentucky Employees Retirement
System and the Board of Trustees of Kentucky Retirement Systems.

(a) Question of law;

(b) Statement of relevant facts and nature of the controversy;

(c) Names of appellants and appellees; and

(d) Names and addresses of counsel.

Ky. R. Civ. P. 76.37.

### (a)    Question of Law

The question of law being certified (the Question) is as follows:

> Whether Seven Counties Services, Inc.'s participation as a department in and its contributions to the Kentucky Employees Retirement System are based on a contractual or a statutory obligation.

### (b)    Statement of Relevant Facts and Nature of the Controversy

The Question arises out of the efforts of Seven Counties Services, Inc., a nonprofit provider of mental health services, to reorganize pursuant to Chapter 11 of the Bankruptcy Code. The bankruptcy and district courts found in favor of Seven Counties, holding that Seven Counties is eligible to file for bankruptcy and that, because Seven Counties' obligation to pay into the Kentucky Employees Retirement System (KERS or the System) is contractual in nature, that obligation could be rejected in bankruptcy as an executory contract. On appeal, this Court affirmed the district court's conclusion that Seven Counties is not a "governmental unit" within the meaning of 11 U.S.C. § 101(27) and so is eligible to file for bankruptcy. *See Ky. Emps. Ret. Sys. v. Seven Ctys. Servs., Inc.*, Nos. 16-5569/5644, --- F.3d --- (6th Cir. Aug. 24, 2018).

The remaining issue, involving Seven Counties' ongoing obligation to contribute to KERS, asks this Court to determine the legal nature of the relationship between Seven Counties and KERS. Seven Counties characterizes the relationship as a contractual one, such that, to the extent it is executory, it may be rejected in bankruptcy. *See* 11 U.S.C. § 365. KERS argues the relationship is purely statutory, in the nature of an assessment, such that it cannot be rejected under

§ 365 and must be maintained throughout the bankruptcy proceedings. *See* 28 U.S.C. § 959(b). Both sides present persuasive arguments, so this Court requests the assistance of the Supreme Court of Kentucky in resolving the issue.

Seven Counties is a Kentucky nonprofit that has provided mental health services in the area surrounding Louisville, Kentucky since 1978. In its role as a community mental health center (CMHC), Seven Counties provides services to approximately 33,000 people, serving as a safety net for adults and children with mental illnesses, emotional or behavioral disorders, developmental or intellectual disabilities, and alcohol or drug addictions.

In 1963, Congress passed the Mental Retardation Facilities and Community Mental Health Centers Construction Act, which provided federal funding to establish CMHCs. Pub. L. No. 88-164, 77 Stat. 282 (1963). Before that time, mental health services in Kentucky, as in most states, were largely provided by the state government. Using federal funding, Kentucky chose to provide services through CMHCs, passing laws that enabled their creation and regulation. Seven Counties' predecessor in the Louisville area, a nonprofit that eventually became known as River Region Mental Health-Mental Retardation Board, was founded at that time.

When River Region and the other new CMHCs formed in 1966, many of their new employees had previously been employees of the Kentucky Department of Mental Health. Those employees were reluctant to leave the state system and give up the retirement benefits they had been accruing in the state public pension system, KERS.[2] In response, the Governor issued an executive order declaring that "community mental health boards are permitted to become and are participating agencies in the Kentucky Employe[e]s Retirement System." Ky. Exec. Order No.

---

[2] KERS is a cost-sharing, multiple-employer, defined-benefit retirement plan. It is not an individual defined-contribution account, such as a 401(k). KERS is administered by the Kentucky Retirement Systems, which also administers separate retirement systems for county employees and for the state police. Both KERS and the Board of the Kentucky Retirement Systems are parties to this suit.

66-378 (June 23, 1966). The order did not distinguish between newly hired employees and those who were transitioning from state employment. Three CMHCs declined to participate; the remainder became part of KERS.

In 1978, River Region filed in the Bankruptcy Court for reorganization and then for bankruptcy under Chapter XI of the Bankruptcy Act of 1898, which was granted. That same year, Seven Counties was incorporated and became the designated CMHC for the area formerly served by River Region. As the bankruptcy court concluded, "[e]xcept for adopting its separate corporate identity and not assuming debt, Seven Counties was the direct successor to River Region for all business and regulatory purposes." *In re Seven Ctys. Servs., Inc. (Ky. Emps. Ret. Sys. v. Seven Ctys. Servs., Inc.)*, 511 B.R. 431, 443 (Bankr. W.D. Ky. 2014), *aff'd in part, rev'd in part*, 550 B.R. 741 (W.D. Ky. 2016).

But Seven Counties was not automatically pulled into KERS. Approximately six months after Seven Counties formed, its executive director sent a letter to the Kentucky Retirement Systems—the body that administers KERS—about Seven Counties' participation in KERS as well as a letter to the Attorney General asking whether it was eligible to participate in KERS. The Attorney General's response cited the provision in Kentucky law that allows an entity to become a participating "department" in KERS upon issuance of an executive order, Ky. Rev. Stat. § 61.510(3), and concluded that because Seven Counties "appears to be [River Region's] newly created successor, it is our opinion that [Seven Counties] employe[e]s may begin to participate in the KERS upon the issuance of an Executive Order from the Governor to that effect." Ky. Op. Att'y Gen. No. 78-685, 1978 WL 26239 (Oct. 4, 1978). Seven Counties then petitioned the Governor to sign an Executive Order to allow Seven Counties to join KERS. In January, the Governor issued an executive order "designat[ing] Seven Counties Services, Inc. as a participating

department in the Kentucky Employe[e]s Retirement System." Ky. Exec. Order No. 79-78 (Jan. 24, 1979).

KERS is a defined benefit plan. Participating employers and their employees pay into the System at a set rate and then, upon retirement, the System pays out the defined benefit at a rate determined by multiplying the employee's final compensation, the "benefit factor," and the number of years of service credit. If the rate at which employers pay into the System is not set appropriately, KERS can become underfunded.

KERS became underfunded in the early 2000s. Recognizing the funding crisis in its public pension system, Kentucky's General Assembly phased in increased employer contribution rates starting in 2008, and then, in 2013, began requiring employers participating in KERS—including the State itself—to contribute at the full, actuarially required rate going forward. *See* Ky. Rev. Stat. § 61.565. Aware of the burden this placed on some participating employers, the legislature provided assistance to CMHCs, keeping their rates somewhat lower than those of other employers in the System. Seven Counties' historic contribution rates were in the single-digit range. When Seven Counties filed its petition in April 2013, its contribution rate was just under 24% of wages.

According to the bankruptcy court, at an employer contribution rate of 24%, "Seven Counties can perform its charitable mission or pay System contributions that will force it to terminate operations. It cannot do both." *In re Seven Ctys. Servs.*, 511 B.R. at 453. And as of 2013, there was no statutory mechanism by which Seven Counties could withdraw from KERS,[3] so Seven Counties filed a Chapter 11 petition. If Seven Counties is permitted to withdraw, KERS estimates that it will leave behind a shortfall of over $90 million to be picked up by other employers in the System or the Commonwealth.

---

[3] In 2015, the General Assembly passed a law allowing an employer to voluntarily withdraw from KERS upon paying withdrawal liability. *See* Ky. Rev. Stat. § 61.522(3)(a).

The proceedings since filing have been lengthy and convoluted. In the instant matter, KERS appeals the dismissal of its complaint in an adversary proceeding. In that complaint, KERS made two basic arguments: (1) that Seven Counties is a "governmental unit" and therefore ineligible to file under Chapter 11, and (2) that Seven Counties should be required to comply with its statutory obligations to make contributions and reports to KERS during the pendency of bankruptcy proceedings. In the same proceeding—and addressed by the bankruptcy court in the same ruling—Seven Counties filed a motion seeking to reject its obligation to contribute to KERS as an executory contract. The bankruptcy court found in favor of Seven Counties on all counts. *See In re Seven Ctys. Servs.*, 511 B.R. at 437. The district court affirmed. This Court affirmed on the first issue but requests the assistance of the Supreme Court of Kentucky in answering the second—that is, in determining whether Seven Counties' obligation to contribute to KERS is contractual or statutory in nature.

Seven Counties argues that the obligation is contractual, on the basis that the 1978 letters to KERS and the Attorney General, along with the subsequent petition to join KERS, constitute an offer, which was accepted with the passage of the Executive Order. The statutes and regulations governing participation in KERS form the terms of the contract. Seven Counties argues that consideration is adequate because by paying contributions, it accessed a pension system, in return for which KERS promised to manage the funds and pay benefits to employees.

KERS responds that the obligation is statutory, in the nature of an assessment. In essence, employer contributions to KERS are a fee for a service, analogous to the charge for drainage services at issue in *Long Run Baptist Ass'n, Inc. v. Louisville & Jefferson County Metropolitan Sewer District*, 775 S.W.2d 520, 521 (Ky. Ct. App. 1989). It argues that the Kentucky General Assembly has made statutory contracts elsewhere, as with the "inviolable contract" found in Ky.

Rev. Stat. § 61.692, but did not take that approach here, instead declaring CMHCs to be "participating department[s]" in KERS, *see* Ky. Rev. Stat. § 61.510(3).

Deciding the nature of the relationship between KERS and Seven Counties requires interpreting both Kentucky statutes governing participation in KERS and Kentucky caselaw about the nature of a contract. In each circumstance, the key problem is one of Kentucky law. *See* Ky. R. Civ. P. 76.37(1).

The Kentucky Supreme Court's decision on this issue "may be"—although will not necessarily be—determinative of almost all of this cause. *See* Ky. R. Civ. P. 76.37(1). To be clear, the "cause" is KERS's adversary proceeding, not the entirety of Seven Counties' bankruptcy filing. If the Kentucky Supreme Court determined that the relationship is statutory in nature, the relatively minor issue of whether that obligation must be faithfully maintained during the pendency of proceedings under 28 U.S.C. § 959(b) would remain; Seven Counties' cross appeal (assuming for the sake of argument that it is properly presented in this proceeding) would also remain. But Seven Counties would be unable to reject its obligation to participate in KERS as an executory contract, which would resolve the core claim raised in KERS's adversary proceeding.

We are not aware of any precedent from Kentucky courts that provides clear guidance in answering this question. *See* Ky. R. Civ. P. 76.37(1). There are a few decisions from Kentucky courts analyzing the statutes governing participation in KERS, *see, e.g., Ky. Region Eight v. Commonwealth*, 507 S.W.2d 489, 491 (Ky. 1974), some describing statutory assessments, *see, e.g., Long Run Baptist Ass'n*, 775 S.W.2d at 521, and many more interpreting the elements of a contract, *see, e.g., Energy Homes v. Peay*, 406 S.W.3d 828 (Ky. 2013). But we are aware of no state court decisions that should guide our choice as to which of these bodies of law to apply.

The United States Supreme Court has long encouraged certification of issues that are "immensely important to a wide spectrum of state government activities." *Elkins v. Moreno*, 435 U.S. 647, 662 n.16 (1978). Though the decision on the issue in this case may resolve a historical problem relating only to this particular entity, it may still have far-reaching consequences. A conclusion that Seven Counties can reject its relationship with KERS could have a significant impact on the fiscal health of the Kentucky public pension system—and therefore on the retirement benefits of many state employees. The contrary conclusion, that Seven Counties cannot reject its relationship with KERS, may imperil the existence of Seven Counties and the provision of mental health services for tens of thousands of people in and around Louisville. Accordingly, the Question is properly subject to review and consideration by the Supreme Court of Kentucky.

### (c)     Names of Appellants and Appellees

*Appellants/Cross-Appellees*

> Kentucky Employees Retirement System;
>
> Board of Trustees of Kentucky Retirement Systems.

*Appellee/Cross-Appellant*

> Seven Counties Services, Inc.

### (d)     Names and Addresses of Counsel

*Counsel for Kentucky Employees Retirement System & Board of Trustees of Kentucky Retirement Systems*

> Daniel R. Swetnam
> Victoria E. Powers
> Tyson A. Crist
> ICE MILLER LLP
> 250 West Street, Suite 700
> Columbus, Ohio 43215

Nos. 16-5569 / 16-5644, *Ky. Emps. Ret. Sys. v. Seven Ctys. Servs., Inc.*

*Counsel for Seven Counties Services, Inc.*

G. Eric Brustad, Jr.
DECHERT LLP
90 State House Square
Hartford, Connecticut 06103

David M. Cantor
SEILLER WATERMAN LLC
Meidinger Tower, 22nd Floor
462 S. Fourth Street, Suite 2200
Louisville, Kentucky 40202

Paul J. Hershberg
GRAY & WHITE
713 E. Market Street, Second Floor
Louisville, Kentucky 40202

### (e)    Certification Order

Pursuant to the foregoing, and invoking Rule 76.37 of the Kentucky Rules of Civil

Procedure, it is hereby ORDERED:

(1) that the Question be, and the same hereby is, certified to the Supreme Court of
Kentucky;

(2) that the Clerk forward to the Supreme Court of Kentucky, under our official seal, a
copy of this Order of Certification; and

(3) that to the extent requested by the Supreme Court of Kentucky, the Clerk provide that
Court with the original or copies of all or such portions of the record before this Court as
the Supreme Court of Kentucky deems necessary to a determination of the Question.

This Order of Certification is entered by Chief Judge Cole, as the Judge presiding at oral argument

in this Court, pursuant to Rule 76.37(4) of the Kentucky Rules of Civil Procedure, with the

concurrences of Judge Stranch and Judge McKeague.[4]

FOR THE COURT:

R. Guy Cole, Jr., Chief Judge
Chief Judge of the United States Court of Appeal for the Sixth Circuit

---

[4] For the reasons stated in his dissent to the accompanying opinion, Judge McKeague believes that Seven Counties, through its Board, is an "instrumentality" of Kentucky under the Bankruptcy Code, and thus remains ineligible to file for bankruptcy under Chapter 11. Therefore, he believes that this certification order is unnecessary.

-9-